

HOROWITZ
TECH LAW P.C.

JOSHUA J. HOROWITZ, ESQ.
Tel.: 212.203.9011
joshua.horowitz@techlawny.com

ADMITTED TO NY, NJ & CA BARS

April 25, 2023

**VIA ECF**
Hon. Paul G. Gardephe
United States District Judge
United States District Court
Southern District of New York
40 Foley Square – Room 705
New York, NY 10007

        Re:    *United States v. Silva, et al. – Alzubair Saleh,*
               Docket No. 23-CR-204 (PGG)

Dear Judge Gardephe:

      I represent Defendant Alzubair Saleh in the above matter. I write to respectfully request that the Court schedule a bail hearing anytime on Friday, April 28, 2023, or anytime Monday May 1, 2023, excluding 3:15 – 4:15 P.M., or as soon as possible thereafter as possible pending the Court's availability.

      Mr. Saleh was arraigned before Magistrate Judge Jennifer E. Cave on April 20, 2023, at which time he consented to detention without prejudice. (ECF Doc. No. 21). Mr. Saleh stands charged charged in three counts of a twenty-count Indictment (ECF Doc. No. 1), as follows:

- Count One: Racketeering Conspiracy in violation of 18 USC 1962(d);
- Count Nineteen: Narcotics Conspiracy in violation of 21 U.S.C. 841(b)(1)(C) and (D); and
- Count Twenty: Use, Carrying and Possession of a Firearm in Furtherance of the Narcotics Conspiracy charged in Count Nineteen, in violation of 18 U.S.C. 924(c)(1)(A)(i).

      While there is a presumption of detention in this case because of the firearm charge in Count Twenty, Mr. Saleh should be released on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno,* 481 U.S. 739 (1987). Mr. Saleh is able to rebut the presumption of detention based on his strong community and family ties to New York, evidence pertaining to his alleged possession of a firearm in relation to Count Twenty charged in the Indictment, the fact that he presents no danger to the community whatsoever, and his record of attendance at prior court proceedings.

      **I.    Mr. Saleh Should Be Released on Bond with Conditions.**

      This Court should release Mr. Saleh with conditions. In this case, the statute creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(e)(3). The presumption inquiry proceeds in two steps. At Step 1, this Court must consider



whether the defense has met the very low burden of production to rebut the presumption.

As set forth below, Mr. Saleh will present evidence that rebuts the presumption. At Step 2, this Court must consider the presumption alongside all of the other § 3142(g) factors—even if the presumption has not been rebutted. Release is warranted in this case because there are numerous facts under § 3142(g) that both rebut the presumption of detention and demonstrate that there are conditions of release that will reasonably assure both Mr. Saleh's appearance in court and the safety of the community.

As the Supreme Court held in *Salerno*, "In our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." 481 U.S. at 755. This presumption of release is encapsulated in the BRA, 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further condition[s]" that will "*reasonably assure*" the defendant's appearance in court and the safety of the community. § 3142(c)(1) (emphasis added).

Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention.").

## II. The Standard for Release in Presumption Cases

"[C]ase law emphasizes two checks that the BRA and the Constitution impose on the presumption: (1) [At Step 1,] there is an easy-to-meet standard for rebutting the presumption and the prosecution always bears the burden of persuasion, and (2) [at Step 2,] the presumption alone does not warrant detention and must always be weighed along with other factors [in 3142(g)]."[1]

The DOJ recently issued a new policy directive aimed at mitigating high detention rates in presumption cases. It instructs that "[p]rosecutors should not seek detention merely because the Bail Reform Act permits such an argument to be made or presumes that detention, based on

---

[1] Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis* 151 (2022), https://freedomdenied.law.uchicago.edu/; *see also Bail*, 51 GEO. L.J. ANN. REV. CRIM. PROC. 396, 407–08 (2022), https://www.westlaw.com/Document/I43b1e73f204811ed9f24ec7b211d8087/View/FullText.html?transiti onType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0.



the charges, is appropriate (as it does for many drug charges, *see* 18 U.S.C. § 3142(e)(3)).”[2] The new directive requires prosecutors to do a "case- and defendant-specific" analysis in deciding whether to seek detention in all cases, including presumption cases.[3]

### III. The Statutory Presumption of Detention Should Be Viewed With Caution Because It Leads to High Rates of Detention for Low-Risk Defendants

Congress enacted the statutory presumption of detention in the Bail Reform Act of 1984 (BRA) to detain "a small but identifiable group of particularly dangerous defendants."[4] Indeed, Congress intended the presumptions to operate primarily on "*major* drug traffickers."[5] Congress emphasized that detention should be presumed only for these major drug traffickers, essentially drug kingpins.[6] "Congress considered at length arrestees' pretrial liberty interests, and concluded that the constitutional concerns with pretrial detention required a narrowly tailored statute to secure community safety and appearance in court."[7]

But the presumption of detention has not worked as intended, and federal pretrial detention rates have skyrocketed since the BRA was enacted, rising from 19% in 1985 to 75% in 2019.[8] A recent study by the Administrative Office of the Courts (AO) attributed this "massive increase"[9]

---

[2] U.S. Dep't of Just., Just. Manual § 9-6.100 (2023), https://www.justice.gov/jm/jm-9-6000-release-and-detention-pending-judicial-proceedings#9-6.100.

[3] *Id.* In response to the FCJC study's findings, some federal judges and defense attorneys have also emphasized that federal pretrial detention is under "scrutinized," with Judge Nancy Gertner (ret.) telling USA Today "there should be court watchers all around the country." Tami Abdollah, *Study: Federal Magistrates, Prosecutors Misunderstand Bail Law, Jailing People Who Should Go Free,* USA TODAY (Dec. 7, 2022), https://www.usatoday.com/story/news/politics/2022/12/07/federal-judges-misapply-bail-law-illegally-jail-arrestees-study-says/10798949002/

[4] S. REP. NO. 98-225, at 6.

[5] S. REP. NO. 98-225, at 20 (emphasis added).

[6] S. REP. NO. 98-225, at 7 (emphasizing that it was only for this "limited group of offenders that the courts [needed the] . . . power to deny release pending trial").

[7] Siegler, *supra* note 1, at 73 (citing S. REP. NO. 98-225, at 8–10).

[8] *Pretrial Release and Detention: The Bail Reform Act of 1984*, BUREAU OF JUST. STAT. SPECIAL REP., at 2 (Feb. 1988), https://www.bjs.gov/content/pub/pdf/prd-bra84.pdf (Table 1) (18.8% of defendants detained pretrial in 1985); *Judicial Business: Federal Pretrial Services Tables*, ADMIN. OFF. U.S. COURTS ("AO Table"), Table H-14 (Sept. 30, 2019) https://www.uscourts.gov/sites/default/files/data_tables/jb_h14_0930.2019.pdf (74.8% of defendants detained pretrial in 2019); *see also* AO Table H-14A (Sept. 30, 2019), https://www.uscourts.gov/sites/default/files/data_tables/jb_h14a_0930.2019.pdf (61% detention rate *excluding immigration cases*).

[9] Amaryllis Austin, *The Presumption for Detention Statute's Relationship to Release Rates*, 81 FED. PROB. 52, 61 (2017) (citing Christopher T. Lowenkamp et al., *Investigating the Impact of Pretrial Detention on Sentencing Outcomes* (The Laura and John Arthur Foundation 2013),



in detention rates to the presumption of detention, especially as it is applied to low- risk defendants.[10] The study concludes that the statutory presumption in drug and firearm cases applies to *nearly half* of all federal cases and to 93% of drug cases.[11] The 2022 Federal Criminal Justice Clinic ("FCJC") study demonstrated that the detention rate for defendants facing a presumption of detention is nearly 20 percentage points higher than that for defendants not facing a presumption, even though today "there is no evidence that people in presumption cases pose any greater risk than those in non- presumption cases."[12]

      The AO study confirms that the presumption increases the detention rate without advancing community safety. Rather than jailing the worst of the worst, the presumption over-incarcerates the lowest-risk offenders in the system, people who are stable, employed, educated, and have minimal to no criminal history.[13] When a low-risk individual is not facing a presumption, they're released 94% of the time.[14] Yet an identically low-risk individual in a presumption case is released just 68% of the time.[15] Recent testimony before Congress relied on this government study to call for reform: "These presumptions must be changed because they've had far-reaching and devastating consequences that were unforeseen and unintended by Congress."[16] Moreover, "[t]he BRA's legislative history demonstrates that Congress did not intend the drug presumption to apply so broadly," and only intended it to apply to "major drug

---

archived at Amaryllis Austin, *The Presumption for Detention Statute's Relationship to Release Rates*, 81 FED. PROB. 52, 61 (2017) (citing Christopher T. Lowenkamp et al., *Investigating the Impact of Pretrial Detention on Sentencing Outcomes* (The Laura and John Arthur Foundation 2013), archived at https://perma.cc/8RPX-YQ78).

[10] *Id.* at 10-11.

[11] *Id.*

[12] Siegler, *supra* note 1, at 158, 160 & fig.19, 153.

[13] *Id.* at 57.

[14] *Id.*

[15] *Id.*

[16] *See The Administration of Bail by State and Federal Courts: A Call for Reform*: *Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 115th Cong. (2019), https://judiciary.house.gov/calendar/eventsingle.aspx?EventID=2256; *Testimony of Alison Siegler* at PDF 6–7 (Nov. 14, 2019), https://docs.house.gov/meetings/JU/JU08/20191114/110194/HHRG-116- JU08-TTF-SieglerA-20191114.pdf; *see also Written Statement of Alison Siegler* at 13–17 (Nov. 14, 2019), https://docs.house.gov/meetings/JU/JU08/20191114/110194/HHRG-116-JU08-Wstate-SieglerA- 20191114.pdf (calling for the complete elimination of the presumptions in drug and gun cases).



traffickers," not people like Mr. Saleh.[17]

This Court can certainly take these developments into account when evaluating the presumption of detention in this case. Based on the proposed legislation, commentators have urged judges to give "little, if any, weight to the drug presumption of detention at the detention hearing stage."[18]

The problems with the statutory presumption of detention are important to Mr. Saleh's motion because, as the AO study confirms, high federal pretrial detention rates come with significant and wide-ranging "social and economic costs."[19] For example, the study explains that "[e]very day that a defendant remains in custody, he or she may lose employment which in turn may lead to a loss of housing. These financial pressures may create a loss of community ties, and ultimately push a defendant towards relapse and/or new criminal activity."[20] Indeed, the economic harms stemming from being detained pretrial persist for years: even three to four years after their Detention Hearing, people released pretrial were still 24.9% more likely to be employed than those who were detained.[21]

### IV. Case Law Emphasizes Two Checks That the BRA and the Constitution Impose on the Presumption of Detention.

Case law has established two checks that the BRA and the Constitution impose on the presumption: (1) there is an easy-to-meet standard for rebutting the presumption and the prosecution bears the burden of persuasion, and (2) the presumption alone does not warrant detention and must always be weighed along with other factors in § 3142(g).[22] In addition, it is impermissible to detain a defendant in a presumption case based solely on evidence of past dangerousness, the nature of the crime charged, or the weight of the evidence.

---

[17] Erica Zunkel & Alison Siegler, *The Federal Judiciary's Role in Drug Law Reform in an Era of Congressional Dysfunction*, 18 OHIO ST. J. CRIM. L. 283, 292 (2020) (analyzing legislative history of presumptions in detail).

[18] *Id.* at 289.

[19] Austin, *supra* note 9, at 61; *see also* Siegler, *supra* note 1, at 22 n.5, 61–72 (discussing the devastating consequences of high jailing rates on individuals, their families, their communities, and society, and citing studies in support).

[20] *Id.* at 53; *see also* Alexander M. Holsinger & Kristi Holsinger, *Analyzing Bond Supervision Survey Data: The Effects of Pretrial Detention on Self-Reported Outcomes*, 82(2) FED. PROB. 39, 42 (2018), archived at https://perma.cc/LQ2M-PL83 (finding that for people detained pretrial for at least three days, 76.1% had a negative job-related consequence and 37.2% had an increase in residential instability).

[21] Will Dobbie et al., *The Effects of Pretrial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges*, 108(2) AMER. ECON. REV. 201, 204 (2018), archived at https://perma.cc/X77W-DAWV.

[22] Siegler, *supra* note 1, at 151.



Hon. Paul G. Gardepehe
United States District Judge
April 25, 2023
Page 6 of 12

### A. Step 1: The Presumption is Easily Rebutted.

Under the law, very little is required for a defendant to rebut the presumption of detention and therefore judges should find the presumption rebutted in most cases. The presumption may be rebutted by the defendant, who "bears a limited burden of production . . . by coming forward with evidence that he does not pose a danger to the community." *United States v. Mattis*, 963 F.3d 285, 290 (2d Cir. 2020) quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). "Once a defendant has met his burden of production . . . the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court. Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community." *Id.*

To rebut the presumption, a defendant simply needs to produce "some evidence that he will not flee or endanger the community if released." *Dominguez*, 783 F.2d at 707; *see also United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990) ("[T]o rebut the presumption, the defendant must produce some evidence."); *United States v. Gamble*, No. 20-3009, 2020 U.S. App. LEXIS 11558 at *1–2 (D.C. Cir. Apr. 10, 2020) (holding that "[t]he district court erred in concluding that appellant failed to meet his burden of production to rebut the statutory presumption" regarding dangerousness because "appellant did 'offer some credible evidence contrary to the statutory presumption,'" including information that he had a job offer) (unpublished) (quoting *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985)).

This "burden of production is not a heavy one to meet." *Dominguez*, 783 F.2d at 707; *see also United States v. Wilks*, 15 F.4th 842, 846–47 (7th Cir. 2021) (explaining that the defense bears "a light burden of production" to rebut the presumption, "but the burden of persuasion always rests with the government"). Indeed, the presumption of detention is rebutted by "*[a]ny evidence* favorable to a defendant that comes within a category listed in § 3142(g) . . . including evidence of their marital, family and employment status, ties to and role in the community . . . and other types of evidence encompassed in § 3142(g)(3)." *Dominguez*, 783 F.2d at 707 (emphasis added); *Jessup*, 757 F.2d at 384. Any "evidence of economic and social stability" can rebut the presumption. *Dominguez*, 783 F.2d at 707.

Notably, a defendant's ties to the community—standing alone—definitively rebut the presumption: "Where the defendant has presented considerable evidence of his longstanding ties to the locality in which he faces trial, as did [this defendant], the presumption contained in § 3142(e) has been rebutted." *United States v. Jackson*, 845 F.2d 1262, 1266 (5th Cir. 1988). As long as a defendant "come[s] forward with some evidence" pursuant to § 3142(g), the presumption of flight risk and dangerousness is definitively rebutted. *Dominguez*, 783 F.2d at 707 ("Any evidence favorable to a defendant that comes within a category listed in § 3142(g) can affect the operation of one or both of the presumptions...Once this burden of production is met, the presumption is 'rebutted.'" (quoting *Jessup*, 757 F.2d at 384)); *see also O'Brien*, 895



F.2d at 816 (finding presumption of flight risk rebutted by evidence of effectiveness of electronic monitoring ankle bracelet together with posting of defendant's home).[23] Importantly, the government bears the burden of *persuasion* at all times. *Dominguez*, 783 U.S. at 707; *Jessup*, 757 F.2d at 384; *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).

### B. Step 2: The Presumption Alone is Not Sufficient to Warrant Detention, and Must Be Weighed Along with the § 3142(g) Factors.

After the presumption is rebutted, the Court must weigh the presumption against all of the other evidence about the defendant's history and characteristics that tilts the scale in favor of release. "Once a defendant has met his burden of production . . . the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court. Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community. *United States v. Mattis,* 963 F.3d 285, 290 (2d Cir. 2020) quoting *United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir. 2001); *see also Dominguez*, 783 F.2d at 707 ("[T]he rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."); *Jessup*, 757 F.2d at 384 (holding that the judge should consider the rebutted presumption along with the § 3142(g) factors). The Court should not give the presumption undue weight if evidence relating to other § 3142(g) factors supports release.

### C. Forbidden Considerations in a Presumption Case

A judge may not detain a defendant in a presumption case based solely on (1) an unrebutted presumption alone, (2) evidence of the defendant's past dangerousness, or (3) the nature and seriousness of the crime charged, or (4) the weight of the evidence of the person's guilt.

First, the defendant never bears the burden of persuasion—even if the presumption is unrebutted. It is not incumbent on the defendant to "persuade the judge that there exist conditions of release that will reasonably assure the safety of the community."[24] That burden of persuasion lies with the government, the standard of which is always clear and convincing evidence. *Wilks*, 15 F.4th at 846–47 ("[T]he burden of persuasion always rests with the government and an unrebutted presumption is not, by itself, an adequate reason to order detention.").

---

[23] To rebut the presumption of flight risk, for example, a defendant does not "have to *prove* that he would not flee—*i.e.*, he would [not] have to *persuade* the judicial officer on the point. [Instead], he would only have to introduce a certain amount of evidence contrary to the presumed fact." *Jessup*, 757 F.2d at 380– 81; *accord Dominguez*, 783 F.2d at 707.

[24] Siegler, *supra* note 1, at 156.



Second, even if the presumption is not rebutted, a judge is prohibited from detaining a defendant "based on evidence that he has been a danger in the past[.]" *Dominguez*, 783 F.2d at 707. Instead, past dangerous conduct is relevant only to the extent that the government can prove—by clear and convincing evidence—that the defendant is "likely to continue to engage in criminal conduct undeterred [ ] by . . . release conditions." *Id.* Even when a defendant is charged with a serious crime or has a significant criminal history, there may be release conditions that will reasonably assure the safety of the community.

Third, to rebut the presumption of dangerousness, a defendant need not "demonstrate that narcotics trafficking [or another serious crime] is not dangerous to the community." *Id.* at 706. Instead, this Court must analyze the defendant's individual characteristics under § 3142(g).

Fourth, the Court is forbidden from relying solely on the weight of the evidence of guilt to detain a defendant in a presumption case. A defendant is not required to "'rebut' the government's showing of probable cause to believe that he is guilty of the crimes charged." *Id.* This makes sense—a person's likelihood of guilt is analytically distinct from whether there are conditions of release that will reasonably assure the person's appearance or the safety of the community.

### V.     The Presumption of Detention is Rebutted in This Case

As detailed below, there is more than "some evidence that Mr. Saleh will not flee or endanger the community if released." *Dominguez*, 783 F.2d at 707. It is imperative that this Court follow the letter of the law by giving the presumption of detention "the low weight to which it is assigned by case law."[25] The defense has therefore rebutted the presumption in this case. Mr. Saleh has strong family and community ties to the New York area. His wife, Vivian Toro, with whom he shares a four-year-old child and is expecting another, is very supportive of Mr. Saleh and willing to co-sign a bond on his behalf. His family roots in the community provide an enormous incentive to return to court and comply with any and all bond conditions.

Mr. Saleh has lived and worked in the New York City area since approximately March 2014. He emigrated to the United States from Yemen and is a United States Citizen. He worked extraordinarily hard, beginning in a bodega in the Bronx in approximately March 2014. For the next two years, he worked nearly twelve hours per day everyday, without a day off. He has consistently worked in the deli industry in New York City since that time.

In its detention memorandum, the government relies extensively on a May 10, 2022 arrest of Mr. Saleh, where he was "arrested in front of his own bodega and found to be in

---

[25] Siegler, *supra* note 1, at 146.



possession of a loaded semi-automatic handgun." (Gov. Det. Memo at 16). What the government fails to disclose to the Court is that arrest is the subject of a Bronx County case that is presently pending in Bronx treatment court. While that case is still pending, he has been permitted to enter a treatment program in which the standing offer is that if he successfully completes the program, he will be permitted to plead to a misdemeanor weapons possession charge under New York Penal Law § 265.01(1).

That proposed disposition was agreed upon by Bronx County prosecutors because Mr. Saleh suffered from two severely traumatic incidents while working at various delis and bodegas. In the summer of 2021, while working at the Saqr Deli, two individuals were involved in an altercation outside of Mr. Saleh's store resulting in one of the individuals being stabbed. The person with the knife entered Mr. Saleh's store and began threatening customers, and telling Mr. Saleh that he was going to kill him. Mr. Saleh was stabbed seven times in both his hands and stomach before collapsing to the floor. In a second incident, two individuals were shot right outside of another store where Mr. Saleh was working, Jamal's Smoke Shop.

The foregoing demonstrates that Mr. Saleh's alleged firearms possession offense, if true, was merely for purposes of self-defense as opposed to some dangerous, gang-related drug-dealing purpose as the government alludes in its detention memorandum. At the very least, this evidence is overwhelmingly sufficient to rebut the presumption of detention in this case.

## VI. Regardless of the Presumption, Mr. Saleh Must be Released Because There are Conditions That Will Reasonably Assure Appearance and Safety

Regardless of whether this Court finds that the presumption of detention is rebutted, Mr. Saleh must be released because there are conditions that will reasonably assure the safety of the community and Mr. Saleh's appearance in court. The presumption of detention, on its own, is insufficient to justify detention. *Wilks*, 15 F.4th at 847 ("[A]n unrebutted presumption is not, by itself, an adequate reason to order detention."); *Jackson*, 845 F.2d at 1266 (concluding that if the presumption alone could justify detention, "there would be no need for Congress to have specified 'the weight of the evidence against the person' as a separate factor for the court to consider"). The BRA requires courts to weigh all the § 3142(g) factors in every case, even when the presumption has not been rebutted. *Wilks*, 15 F.4th at 847.[26]

---

[26] S. REP. NO. 98-225, at 23, *as reprinted in* 1984 U.S.C.C.A.N. at 3206 ("Subsection (g) enumerates factors that are to be considered by the judicial officer in determining whether there are conditions of release that will reasonably assure the appearance of the person and the safety of any other person and the community. Since this determination is made *whenever a person is to be released or detained under this chapter, consideration of these factors is required* . . . a court is expected to weigh all the factors in the case before making its decision as to risk of flight and danger to the community." (emphasis added)).



A defendant cannot be detained "unless a finding is made that no release conditions '*will* reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *Dominguez*, 783 F.2d at 707 (quoting § 3142(e)). Here, the government has not carried its high burden of proving by clear and convincing evidence that there are *no* release conditions that will reasonably assure the safety of the community. *See id.* at 708 n.8. The government also has not proved by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Saleh's appearance in court. Thus, Mr. Saleh cannot be detained.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Saleh's appearance in court and the safety of the community:

- *A Substantial Appearance Bond*: A $200,000.00 appearance bond, co-signed by the following three financially responsible sureties:

    - Vivian Toro – Mr. Saleh's wife. She is employed as home health aide through Blue Line Health Care, a home health care agency. She earns approximately $1,000.00 per week. Her and Mr. Saleh share a four (4) year old child and are expecting another child.

    - Diana Ivette Alonzo – Ms. Toro's sister, Mr. Saleh's sister-in-law. She is disabled and earns social security income.

    - Mohammed Saleh – Mr. Saleh's father, who receives social security income.

*Home Confinement and Strict Pretrial Supervision*: Mr. Saleh consents to any reasonable further conditions of release the Court deems necessary, such as electronic/GPS monitoring, home confinement, and the most stringent pretrial supervision conditions.

Because there are conditions of release that will reasonably assure Mr. Saleh's appearance in court and the safety of the community, he should be released.

### VII. Statistics Showing that It Is Extraordinarily Rare for Defendants on Bond to Flee or Recidivate Further Demonstrate that the Foregoing Conditions of Release Will Reasonably Assure Appearance and Safety

It is not necessary to detain Mr. Saleh to meet the primary goals of the BRA, which are to "reasonably assure" appearance in court and community safety. § 3142(e). In this case, this Court should be guided by AO statistics showing that nearly everyone released pending trial in the federal system appears in court and does not reoffend. In fact, in 2021, 99% of released federal defendants nationwide appeared for court as required and 99% were not arrested for new



crimes on bond.[27] Significantly, this near-perfect compliance rate is seen equally in federal districts with very high release rates and those with very low release rates.[28] Even in districts that release two-thirds of all federal defendants on bond, just 1% fail to appear in court and 1% are rearrested while released.[29] The below chart reflects shows the same vanishingly low failure to appear and rearrest rates based on AO data spanning 2007 to 2021.[30]



Figure 4: Even When Release Rates Increase, Arrestees Almost Never Flee or Recidivate.

---

[27] App. 1, AO Table H-15 (Sept. 30, 2022). These high compliance rates have remained remarkably consistent over time, both before and after the pandemic. *See, e.g.*, Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide appearance rate of 99% and non-rearrest rate of 98%).

[28] The data showing near-perfect compliance on bond is illustrated in the figure below. Siegler, *supra* note 1, at 25 fig.4. The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending September 30, 2021. *See* App. 2, AO Table H-14A (Sept. 30, 2021), https://perma.cc/CYV5-3TZ6. The failure-to-appear and rearrest rates for these districts were calculated using App. 1, AO Table H-15. With regard to flight, the ten federal districts with the lowest release rates (average 20.00%) have an average failure-to-appear rate of 1.6%, while the ten districts with the highest release rates (average 64%) have an *even lower* failure-to-appear rate of 1.1%. *See* App. 1; App. 2. With regard to recidivism, the ten districts with the lowest release rates have an average rearrest rate on bond of 0.8%, while the ten districts with the highest release rates have an average rearrest rate of 1.1%. *See* App. 1; App. 2

[29] *See* App. 1; App. 2.

[30] *See* Siegler, *supra* note 1, at 25 fig.4.



In addition, as the federal Probation and Pretrial Services Office recently highlighted, release rates rose slightly during the pandemic but failure-to-appear and rearrest rates did not increase.[31] Release rates increased from 25% in 2019 to 36% in 2021 but "the rates at which people on pretrial release failed to appear in court or were rearrested remained extremely low."[32]

The bond statistics for this district likewise strongly suggest that Mr. Saleh should be released. In this district, released federal defendants appeared for court more than ninety-nine (99%) percent of the time in 2021, and only 3.1% of defendants were rearrested on release, with only 1.4% of those arrests being the result of felony violations. *See* App. 1, AO Table H-15.

Yet despite the statistically low risk of flight and recidivism that defendants like Mr. Saleh pose, the government recommends detention in 71% of cases nationwide and in 49.7% of cases in this District. *See* App. 3, AO Table H-3. Clearly the government's detention requests are not tailored to the low risk of flight and recidivism that defendants in this district and elsewhere pose.

Mr. Saleh must be released because the government has not established that he would be among the approximately 1% of defendants who fail to appear in court or are rearrested on bond. Detaining Mr. Saleh without such evidence violates their constitutionally protected liberty interest.

### VIII. Conclusion

For the foregoing reasons, Mr. Saleh respectfully requests that this Court find that the presumption favoring detention has been rebutted and release him with conditions. My thanks to the Court for its consideration of this application.

Respectfully submitted,

Joshua J. Horowitz

cc: AUSA Michael Herman (via ECF)
AUSA Matthew King (via ECF)
AUSA Jacob Fiddelman (via ECF)
All counsel (via ECF)

---

[31] *Id.* at 246 n.42.
[32] *Id.*